```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                    TAMPA DIVISION

 3           Docket No. 8:16-cr-517-T-33-AEP

 4    . . . . . . . . . . . . . . .
                                   :
 5    UNITED STATES OF AMERICA,    :
                                   :
 6           Plaintiff,            : Tampa, Florida
                                   : June 20, 2017
 7           v.                    : 3:06 - 3:55 p.m.
                                   :
 8    RICHMOND JOSEPH MCDONALD,    :
                                   :
 9           Defendant.            :
      . . . . . . . . . . . . . . .
10

11

12            TRANSCRIPT OF CHANGE OF PLEA
         BEFORE THE HONORABLE ANTHONY E. PORCELLI
13             UNITED STATES MAGISTRATE JUDGE

14    APPEARANCES:

15    Counsel for Plaintiff:     Lisa Thelwell, Esquire
                                 Assistant United States Attorney
16                               400 North Tampa Street, Suite 3200
                                 Tampa, Florida  33602
17

18    Counsel for Defendant:    Kevin T. Beck, Esquire
                                 Law Office of Kevin T. Beck
19                               2153 First Avenue South
                                 St. Petersburg, Florida  33712
20
      Court Reporter:      Nikki L. Peters, RPR, CRR, CRC, FPR
21                         Federal Official Court Reporter
                           801 North Florida Avenue, Second Floor
22                         Tampa, Florida  33602
                           courttranscripts@outlook.com
23

24
      Proceedings recorded by mechanical stenography.
25    Transcript produced by Computer-Aided Transcription.
```

**P R O C E E D I N G S**

1

2       **THE COURT:**  Let's call the case, please.

3       **THE COURTROOM DEPUTY:**  United States of America

4   versus Richmond Joseph McDonald, 8-16-cr-517-T-33-AEP.

5       **THE COURT:**  Counsel, state your appearance for the

6   record, please.

7       **MS. THELWELL:**  Good afternoon, Lisa Thelwell on

8   behalf of the United States.

9       **THE COURT:**  Thank you, Ms. Thelwell.

10      **MR. BECK:**  Good afternoon, Your Honor.  Kevin Beck

11   on behalf of Richmond Joseph McDonald, who is seated to my

12   left.

13      **THE COURT:**  Thank you, Mr. Beck.

14       All right.  Good afternoon, Mr. McDonald.

15   Mr. McDonald, it's my understanding, sir, that you want to

16   enter plea of guilt in your case; is that correct?

17      **THE DEFENDANT:**  Yes, sir.

18      **THE COURT:**  The purpose of this hearing is so I

19   can conduct an inquiry into your decision to ensure your

20   decision is being done both knowingly and voluntarily.

21   During the question -- excuse me.  During this hearing, I'm

22   going to ask you a number of questions as well as some

23   questions for your attorney and the prosecutor.  It is vital

24   that you understand everything that we are going to discuss.

25   So if at any point you do not understand something, I want

1    you to feel free to interrupt me so I can explain it to you

2    further.

3              Additionally, if at any time you need to discuss

4    anything with Mr. Beck, you just let me know.  I'll stop the

5    hearing and give you all the time that you need.  Do you

6    understand that, sir?

7              **THE DEFENDANT:**  Yes, sir.

8              **THE COURT:**  And you don't have to lean into that

9    microphone.  It will pick you up all right.

10             All right.  In a moment, I'm going to ask my

11   courtroom deputy to place you under oath.  I tell you this

12   because it's important you understand the consequences of

13   the oath.  If, in responding to my questions, you should

14   provide any false or misleading answers, you can be charged

15   with other crimes such as perjury or obstruction of justice.

16   Those crimes will carry additional penalties beyond the

17   penalties you are facing in this case.

18             Do you understand that?

19             **THE DEFENDANT:**  Yes, sir.

20             **THE COURT:**  All right.  Madam Deputy.

21             **THE COURTROOM DEPUTY:**  Please rise.

22             Raise your right hand.

23             (Defendant sworn.)

24             **THE DEFENDANT:**  So help me God.

25             **THE COURTROOM DEPUTY:**  Thank you.  Have a seat,

1    please.

2            I'll ask you to please state your name for the

3    record.

4            **THE DEFENDANT:**  Richmond Joseph McDonald.

5            **THE COURTROOM DEPUTY:**  Thank you.

6            **THE COURT:**  Mr. McDonald, before I begin, I do

7    want you to understand that if at the end of the hearing you

8    do decide to enter plea of guilt and your plea is accepted

9    by the Court, it will become very difficult, if not

10   impossible, for you later to change your mind.  Do you

11   understand that, sir?

12           **THE DEFENDANT:**  Yes, sir.

13           **THE COURT:**  I have to ask you some questions you

14   may consider to be somewhat personal in nature.  I want you

15   to understand that in no way am I trying to embarrass you.

16   The purpose of these questions is in order for me to ensure

17   for the record that you are competent to enter a plea of

18   guilt.  Do you understand what I mean by that?

19           **THE DEFENDANT:**  Yes, sir.

20           **THE COURT:**  All right, sir.  How old are you?

21           **THE DEFENDANT:**  Forty, sir.

22           **THE COURT:**  And how far did you go in school?

23           **THE DEFENDANT:**  I have an associates in arts.

24           **THE COURT:**  Was there ever a time that you read

25   the charge against you in this case?  That is Count I of the

1   superseding indictment.  Did you ever read that charge?

2           **THE DEFENDANT:**  Yes, sir.

3           **THE COURT:**  And after reading it, did you feel

4   that you understood the charge?

5           **THE DEFENDANT:**  I believe so, sir.

6           **THE COURT:**  To your knowledge, have you ever

7   suffered from any mental disease or defect of any kind?

8           **THE DEFENDANT:**  No, sir.

9           **THE COURT:**  In the past 24 hours, have you taken

10  any medication or drugs of any kind?

11          **THE DEFENDANT:**  No, sir.

12          **THE COURT:**  Is there anything at all impacting

13  your ability to think clearly today?

14          **THE DEFENDANT:**  No, sir.

15          **THE COURT:**  Do you feel that you understand the

16  purpose of this hearing?

17          **THE DEFENDANT:**  Yes, sir.

18          **THE COURT:**  All right.  Mr. Beck, any concerns

19  regarding competency in the matter?

20          **MR. BECK:**  No, Your Honor.

21          **THE COURT:**  All right.  Thank you.

22          Let me just note for the record then, based upon

23  Mr. McDonald's responses to my questions, as well as his

24  demeanor, I do find that he is fully competent to enter a

25  plea of guilt, if he chooses to do so.  So what that means,

1    sir, is I'm going to go forward with the plea hearing.  But

2    before I proceed, I must also inform you that you do have

3    the right to have your plea heard by the district judge

4    assigned to your case.  I am the magistrate judge assigned

5    to your case.  The district judge is Judge Virginia

6    Covington.

7           Judge Covington's authority is different from my

8    authority.  Judge Covington not only has the authority to

9    hear your plea, but it is Judge Covington who will decide

10   whether to accept your plea and adjudicate you guilty.  If

11   you are adjudicated guilty in the case, it will then be

12   Judge Covington who will impose sentence upon you.  If you

13   decide not to enter a plea of guilt, but rather take the

14   case to trial, it would be Judge Covington who will preside

15   over your trial.

16          My authority is just limited to conducting this

17   hearing to determine whether you are entering your plea

18   knowingly and voluntarily.  If I make that determination, I

19   will then issue a report recommending to Judge Covington

20   that your plea be accepted.

21          Now, having stated that, do you feel that you

22   understand the difference in my authority as compared to

23   Judge Covington's authority?

24          **THE DEFENDANT:**  I believe so, sir.

25          **THE COURT:**  And knowing that difference, do you

1   wish to waive your right to have your plea before Judge

2   Covington and have your plea before me today?  In other

3   words, do you want to plea in front of me today?

4            **THE DEFENDANT:**  Yes, sir, in front of you.

5            **THE COURT:**  All right.  Has anyone forced you or

6   threatened you in any way in order for you to waive your

7   right to have the plea before Judge Covington?

8            **THE DEFENDANT:**  No, sir.

9            **THE COURT:**  Anyone promise you anything of value

10  in order for you to waive that right?

11           **THE DEFENDANT:**  No, sir.

12           **THE COURT:**  All right.  Then, based upon your

13  waiver, I do find it appropriate to go forward with your

14  plea.

15           What I want to do first for you is to summarize

16  Count I of the superseding indictment since that is the

17  charge you agree to plea guilty to.

18           Count I alleges, in summary, that from an unknown

19  date, but at least from on or about July 11th of 2016,

20  through and including on or about July 24th, 2016, in the

21  Middle District of Florida and elsewhere, you, using a

22  facility of interstate commerce, that is specifically a

23  computer via the Internet, did knowingly persuade, induce,

24  entice or coerce S.E., an individual who had not attained

25  the age of 18 years, to engage in sexual activity for which

```
 1    any person could be charged with a criminal offense under

 2    the laws of the state of Florida, specifically the crime of

 3    lewd and lascivious battery upon a person less than 16 years

 4    of age.

 5             This crime is alleged to be in violation of

 6    Title 18, United States Code, Section 2422(b)(2).

 7             So, Mr. McDonald, I want to ask you again, sir, do

 8    you feel you understand that charge against you?

 9             THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you feel you've had a full and fair

11    opportunity to review all the facts and evidence in your

12    case regarding the charges against you in consultation with

13    Mr. Beck?  In other words, have you had enough time to

14    discuss all of the matters about your case with Mr. Beck?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And has Mr. Beck done everything that

17    you have asked him to do for you in your case?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Are you fully satisfied with the

20    advice and representation you have received in your case?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  You need a drink of water?

23             THE DEFENDANT:  Yeah.  Thank you.

24             THE COURT:  I think you got to twist that,

25    Mr. Beck.  It's lawyer-proof.
```

1          Mr. McDonald, I realize this is a very difficult

2    thing for you, and, with that, comes, I'm sure, a certain

3    amount of anxiety.  I just want to impress upon you again,

4    it's important that you understand everything that we're

5    discussing.  So I don't want you to be distracted by

6    anything.  So if you need a moment or a break or anything,

7    you just let me know, all right?  Don't hesitate.

8          **THE DEFENDANT:**  Thank you, sir.

9          **THE COURT:**  All right.  So as I was explaining and

10   wanted to know from you, do you feel you've had a full and

11   fair opportunity to discuss everything with Mr. Beck about

12   your case?

13         **THE DEFENDANT:**  Yes, sir.

14         **THE COURT:**  And are you fully satisfied with the

15   advice and representation you have received in the case?

16         **THE DEFENDANT:**  Yes, sir.

17         **THE COURT:**  Did you discuss with Mr. Beck all your

18   options in your case to specifically include your option to

19   take the case to trial if you want to go to trial?

20         **THE DEFENDANT:**  Yes, sir.

21         **THE COURT:**  After having those conversations, are

22   you satisfied with your decision to plead guilty pursuant to

23   your written plea agreement?

24         **THE DEFENDANT:**  I am, Your Honor.

25         **THE COURT:**  All right.  If you can, confirm for me

1   by looking at the plea agreement that those are your

2   initials on each of the pages and your signature on the last

3   page of the plea agreement.

4           THE DEFENDANT:  They are, Your Honor.

5           THE COURT:  Do the initials on each of the pages

6   and your signature on the last page memorialize that you

7   reviewed it in its entirety in consultation with Mr. Beck?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  And has he answered for you all your

10  questions about the plea agreement?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  As such, do you feel that you

13  understand all the provisions of the plea agreement?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  All right, sir.  What I intend to do

16  is discuss with you a number of these provisions in some

17  detail.  I'm not going to cover each and every provision.

18  But that's not to say that I think one provision is more

19  important than another.  If you have any questions about

20  anything in the plea agreement, you just let me know, and we

21  will discuss it further.

22          You understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Let's look at page 1,

25  paragraph A1.  This provision simply memorializes what we've

1   already discussed, that is you agree to plead guilty to

2   Count I of the superseding indictment which charges you with

3   enticement of a minor in violation of Title 18, United

4   States Code, Section 2422(b).  Again, Mr. McDonald, is that

5   the charge you agree to plead guilty to in your case?

6           **THE DEFENDANT:**  Yes, Your Honor.

7           **THE COURT:**  If we go to page 3 of the plea

8   agreement, look at paragraph A4.  This provision, in return

9   for your agreement to plead guilty to Count I of the

10  superseding indictment, the United States has agreed to

11  dismiss the remaining counts against you, that is charges II

12  through IV.

13          Ms. Thelwell, is there an the underlying

14  indictment as well?

15          **MS. THELWELL:**  Yes, Your Honor.

16          **THE COURT:**  Are there charges against the

17  defendant in that indictment, as well?

18          **MS. THELWELL:**  You're discussing the original

19  indictment?

20          **THE COURT:**  Yes.

21          **MS. THELWELL:**  Yes, Your Honor.  But they've been

22  superseded with this indictment.

23          **THE COURT:**  I assume that the Government is going

24  to dismiss that indictment, as well, then?

25          **MS. THELWELL:**  Correct, Your Honor.

12

1          **THE COURT:**  All right.  Thank you.

2          All right.  Do you have any questions about that,

3     sir?

4          **THE DEFENDANT:**  No, Your Honor.

5          **THE COURT:**  All right.  Let's look at this next

6     provision, paragraph A5.  By this provision, the United

7     States Attorney's Office for the Middle District of Florida

8     has agreed not to charge you with committing any other

9     Federal criminal offenses known to that office as it relates

10    to the offense in this case, and specifically to the child

11    victim, that are known to the United States Attorney's

12    Office at the time of the execution of this plea agreement.

13         So, simply stated, if the Government is aware of

14    other criminal conduct that you may have been engaged in,

15    but that criminal conduct is not related to the victim in

16    this case, the Government remains free to charge you with

17    that known but unrelated criminal conduct.

18         Do you understand that?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  So Mr. Beck, I want to make sure my

21    understanding is correct.  As I read this, it is not related

22    to the underlying offense solely but to the victim?  Is that

23    your understanding?

24         **MR. BECK:**  It is, Your Honor.

25         **THE COURT:**  All right.  All right.  So,

1    Mr. McDonald, any questions about that?

2           THE DEFENDANT:  No, Your Honor.

3           THE COURT:  I want you to understand, sir, that

4    your plea agreement is, in essence, like a contract.  It is

5    a contract between you and the United States Attorney for

6    the Middle District of Florida.  And I put it to you in

7    those terms because it's important you understand that there

8    are no other parties to the plea agreement except yourself

9    and the United States Attorney.

10          To emphasize this point, I want to draw your

11   attention to paragraph B7, which is -- excuse me, B8, which

12   is on page 16 of the plea agreement.  This provision

13   specifically puts you on notice of this issue.  It reads, in

14   summary, that it is understood the plea agreement is limited

15   only to the Office of the United States Attorney for the

16   Middle District of Florida, and it cannot bind any other

17   Federal, State or local prosecuting authorities.

18          Do you understand that, sir?

19          THE DEFENDANT:  I believe so, sir.

20          THE COURT:  All right.  Do you have any questions

21   about that?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  All right.  There are certain

24   provisions in the plea agreement that were negotiated on

25   your behalf in an effort to mitigate any potential sentence

1    you may receive.  I want to draw your attention back to page

2    3 of the plea agreement, paragraph A7, as this is one such

3    provision.  By this provision, the United States has agreed

4    to recommend to the Court that you be sentenced within the

5    applicable advisory guideline range as calculated by the

6    Court pursuant to the United States sentencing guidelines,

7    as adjusted by any departure the United States has agreed to

8    recommend in your plea agreement.

9            So I want to explain that a little bit more for

10   you.  At your sentencing hearing, the District Court is

11   going to utilize the United States sentencing guidelines to

12   perform a type of calculation in order to determine an

13   appropriate advisory guideline range for your case.  The

14   calculation of the advisory guideline range is very

15   important to you because the Court is going to use that

16   range as a guide to determine your sentence.

17           The advisory guideline range will consist of a

18   high end, as well as a low end, in terms of months of

19   imprisonment.  And once the Court has calculated the

20   appropriate range by this provision, the Government will

21   then recommend that you be sentenced within that range.  In

22   other words, that the Court not depart or vary above or

23   beyond the range.

24           Do you understand that?

25           **THE DEFENDANT:**  Yes, sir.

1          **THE COURT:**  Any questions about that?

2          **THE DEFENDANT:**  No, Your Honor.

3          **THE COURT:**  All right.  Let's go on to the next

4    provision, paragraph A8.

5          By this provision, absent any adverse information

6    which may be received suggesting such a recommendation to be

7    unwarranted, the United States has agreed it will not oppose

8    your request to the Court that you receive a two-level

9    downward adjustment based upon your acceptance of

10   responsibility.  Additionally, if it is applicable, the

11   United States has agreed to file a motion with the Court

12   requesting an additional one-level downward adjustment based

13   upon your acceptance.

14         So, in other words, by this provision,

15   Mr. McDonald, there is a total potential for a three-level

16   downward adjustment in the advisory guideline range

17   calculation based upon your acceptance of responsibility in

18   the case.  Do you understand that?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  I want to remind you what we spoke

21   about just a moment ago, that is the plea agreement is only

22   binding upon yourself and the United States Attorney.  The

23   reason why I'm reminding you of that is because it's

24   important you understand that the Court is not a party to

25   the plea agreement.  And, as such, the Court cannot be bound

1    by any of the provisions of the plea agreement.

2              To emphasize this point, I want to bring your

3    attention to page 15.  At the top of that page is paragraph

4    B6.  In the middle of this provision, you're specifically

5    put on notice of this issue.  It reads, in summary, that you

6    "further understand and acknowledge any discussions between

7    you or your attorney and the attorney or their agents for

8    the Government, regarding any recommendations by the

9    Government, are not binding on the Court, and that should

10   any recommendations be rejected, you will not be permitted

11   to withdraw from your plea pursuant to the plea agreement."

12             So, again, Mr. McDonald, simply stated, the Court

13   does not have to follow any of the provisions of the plea

14   agreement.  If the Court does not follow any of the

15   provisions, you cannot later complain and ask to withdraw

16   from the plea of guilt.

17             Do you understand that?

18             **THE DEFENDANT:**  Yes, Your Honor.

19             **THE COURT:**  Any questions about that?

20             **THE DEFENDANT:**  No, Your Honor.

21             **THE COURT:**  I want you also to understand that

22   absent the plea agreement in this case, you would have the

23   right to appeal any sentence that you would receive.  That

24   is, you would have the right to complain to a higher court

25   about your sentence.  But by this next provision, starting

1   on page 15, and continuing on to page 16, in paragraph B7,

2   by this provision you have expressly waived your right to

3   appeal the sentence unless certain events occur.  Those

4   events include:  One, the ground that the sentence exceeds

5   the applicable advisory guideline range as calculated by the

6   Court, pursuant to the United States sentencing guidelines;

7   two, the ground that the sentence exceeds the statutory

8   maximum penalty; three, the ground that the sentence

9   violates the Eighth Amendment to the Constitution, which is

10  cruel or unusual punishment; or, four, in the event the

11  Government files an appeal in your case, you would then be

12  free from the waiver, and you can appeal the sentence as

13  well.

14          Do you understand, Mr. McDonald, by this provision

15  of the plea agreement you've expressly waived your right to

16  appeal the sentence unless one of those events occurs as

17  I've just described them?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Has anyone forced you or threatened

20  you in any way in order for you to waive your right to

21  appeal the sentence?

22          **THE DEFENDANT:**  No, Your Honor.

23          **THE COURT:**  Other than what's in your plea

24  agreement, has anyone promised you anything else of value in

25  order for you to waive that right?

1          **THE DEFENDANT:**  No, Your Honor.

2          **THE COURT:**  I want to just ask you in general as

3     to your decision to plead guilty.

4              Has anyone forced you or threatened you, or anyone

5     you may know for that matter, in order to induce you to plea

6     guilty in this case?

7          **THE DEFENDANT:**  No, sir.

8          **THE COURT:**  Outside of what's in this plea

9     agreement, has anyone promised you anything else of value in

10    order to induce you to plea guilty?

11         **THE DEFENDANT:**  No, sir.

12         **THE COURT:**  Mr. Beck, are you aware of any outside

13    promises?

14         **MR. BECK:**  There are none, Your Honor.

15         **THE COURT:**  Ms. Thelwell, are you aware of any?

16         **MS. THELWELL:**  No, Your Honor.

17         **THE COURT:**  Mr. McDonald, I need to explain to you

18    that by pleading guilty, there will be collateral

19    consequences to your plea.  Those consequences will include

20    the loss of valuable civil rights, such as the right to

21    vote, the right to hold public office, the right to serve on

22    a jury, or the right to possess a firearm or ammunition of

23    any kind.  Do you understand that by pleading guilty in this

24    case, you are giving up these valuable civil rights as I've

25    just described them?

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  All right.  I want you to understand,

3     then, the penalties associated with Count I of the

4     superseding indictment.  These penalties are outlined for

5     you on page 1, paragraph A2 of the plea agreement.

6          Count I is punishable by a mandatory-minimum term

7     of imprisonment of 10 years, up to a maximum term of

8     imprisonment of life; a maximum fine of $250,000; a term of

9     supervised release of at least five years, up to a maximum

10    of life; and a special assessment of $100 which will be due

11    on the date of sentencing.

12          Having said that, do you feel you understand the

13    penalties associated with Count I as I've described them?

14          **THE DEFENDANT:**  Yes, sir.

15          **THE COURT:**  Additionally, I'll let you know, that

16    under Federal statute, the Court will impose a $5,000

17    special assessment if you are deemed to be non-indigent.

18    That is, specifically, if the Court finds that appropriate,

19    given your financial circumstances, the fine amount of

20    $5,000, under the statute, is warranted.

21          Do you understand that?

22          **THE DEFENDANT:**  Yes, sir.

23          **THE COURT:**  I want you to understand what a term

24    of supervised release is.  After you are released from jail,

25    the Court is going to place you on a term of supervision.

```
 1    In that, the Court will place upon you certain conditions or
 2    restrictions on your liberties.  If you violate any of the
 3    Court's conditions while on supervision, the Court, after
 4    conducting a hearing, could order you back to jail for an
 5    additional period of time.
 6            Now, having stated that, do you feel that you
 7    understand the potential consequence for a violation of
 8    supervised release?
 9            THE DEFENDANT:  Yes, sir.
10            THE COURT:  I must also explain to you that parole
11    has been abolished.  Now, what this simply means is that
12    whatever term of imprisonment that you receive in the case,
13    you will serve all that time incarcerated and not be
14    released on early parole.  Do you understand that?
15            THE DEFENDANT:  Yes, sir.
16            THE COURT:  Now, as part of your sentence, the
17    Court is also going to order any appropriate restitution or
18    order you to forfeit any assets it deems subject to
19    forfeiture.
20            As to restitution, the Court is going to determine
21    if there are any identifiable victims that have suffered any
22    pecuniary harm as a result of the offense you are pleading
23    guilty to.  In this regard, I want to draw your attention to
24    paragraph A6, which is on page 3 of the plea agreement,
25    which is entitled:  "Mandatory Restitution to Victim of
```

```
 1    Offense of the Conviction."  By this, you have specifically
 2    agreed to make full restitution to the child victim.
 3              Ms. Thelwell, does the Government have any
 4    calculation as to restitution as of yet?
 5              MS. THELWELL:  No, Your Honor.
 6              THE COURT:  All right.  So, Mr. McDonald, what you
 7    need to understand is the Court is going to determine, one,
 8    if there is any restitution in order to be ordered.  And,
 9    two, if it makes such a determination, it will calculate
10    that restitution and will order you, as part of the
11    sentence, to pay restitution to the child victim, to which
12    you have agreed to by paragraph A6.  Do you understand that,
13    sir?
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  Any questions about that?
16              THE DEFENDANT:  No, sir.
17              THE COURT:  All right.  As to forfeiture of
18    assets, I want to draw your attention to paragraph A9,
19    starting on page 5 of the plea agreement.  So by this
20    provision, Mr. McDonald, you have specifically agreed to
21    forfeit to the United States, immediately and voluntarily,
22    any and all assets or property which may be subject to
23    forfeiture.  Property that is subject to forfeiture
24    typically comes in one of two ways.  First, any property
25    that was gained as a result of the offense you are pleading
```

1  guilty to; or, second, any property that was utilized during

2  the commission of the offense you are pleading guilty to.

3        Specifically outlined for you in subparagraphs 1

4  through 11 there is property that is listed that you have

5  agreed to forfeit any rights or interest that you have in

6  that property, which include, to summarize:  An LG cell

7  phone, a Gateway desktop computer, a Gateway laptop

8  computer, a Seagate hard drive, a Windows Surface Pro, a

9  Nexus tablet, a Toshiba external hard drive, an LG cellular

10  phone, a Garmin GPS, a vehicle that is a Nissan Juke with a

11  VIN number listed, and the single-family residence located

12  at 8202 Downfield Lane.

13        Do you understand that by this provision you agree

14  to forfeit any rights or interest you have in any of that

15  property listed?

16        **THE DEFENDANT:**  Yes, Your Honor.

17        **THE COURT:**  Do you have any questions at all as to

18  forfeiture of assets?

19        **THE DEFENDANT:**  No, Your Honor.

20        **THE COURT:**  All right.  Mr. McDonald, I would like

21  to know if you've discussed the United States sentencing

22  guidelines with Mr. Beck and how they might apply in your

23  case?

24        **THE DEFENDANT:**  We have, Your Honor.

25        **THE COURT:**  Sir, not only is that perfectly

1    appropriate, but it is anticipated you would do that.   I

2    need to emphasize for you -- and it's very important you

3    understand -- that no one -- and by no one, that includes

4    your attorney -- no one can tell you with any certainty what

5    your advisory guideline range will be.   This cannot be done

6    for a number of reasons.   And one specific reason is because

7    the United States Probation Office has to prepare an

8    important document called a Presentence Investigative

9    Report.   This is an important report to you because the

10   Court is going to use it as an aid to determine your

11   sentence.

12         You are going to have the opportunity to review

13   this report in consultation with Mr. Beck prior to the

14   sentencing hearing, and you will be allowed to make any

15   objections to the report you deem necessary.   The Government

16   is going to have that same opportunity.

17         If the objections go unresolved prior to the

18   sentencing hearing, they then will be resolved at the

19   sentencing hearing by the Court.

20         Now, having stated that, again, I need to

21   emphasize for you that no one can tell you with any

22   certainty what your advisory guideline range will be.   So,

23   in essence, what this means, if, after consulting with

24   Mr. Beck, you've attempted to estimate a potential guideline

25   range, or a sentence for your case, you need to understand

1    that your estimation could be wrong.  And if it is wrong,

2    you cannot later complain and ask to withdraw from your plea

3    of guilt.

4            Do you understand that?

5            **THE DEFENDANT:**  Yes, Your Honor.

6            **THE COURT:**  I must also emphasize for you that the

7    United States sentencing guidelines are not binding upon the

8    Court.  That is, they are only advisory.  So, what that

9    means is, once the Court has calculated the appropriate

10   advisory guideline range for your case, the Court, in some

11   circumstances, could depart or vary above or beyond the

12   range up to the statutory maximum sentence, or, in other

13   circumstances, depart or vary below the range to the

14   statutory minimum sentence.

15           Do you understand that?

16           **THE DEFENDANT:**  Yes, Your Honor.

17           **THE COURT:**  Mr. McDonald, has anyone promised you

18   a specific sentence by entering a plea of guilt in your

19   case?

20           **THE DEFENDANT:**  No, sir.

21           **THE COURT:**  All right, sir.  It's very important

22   you understand that by pleading guilty, you are giving up

23   very valuable Constitutional rights.  These rights include

24   your right to persist in a plea of not guilty and take your

25   case to trial.  At the trial, it would be the Government who

1   would always bear the burden of proof to establish your

2   guilt as charged beyond a reasonable doubt.  At the trial,

3   you'd be presumed innocent, and you would never be required

4   to prove anything at all, to specifically include to prove

5   that you were not guilty.

6           Now, at the trial, you would have a jury of 12

7   persons who would be selected at random from the community

8   and who could not find you guilty unless each and every

9   member of the jury unanimously agreed beyond a reasonable

10  doubt that you committed each of the essential elements of

11  the charged offense.  That is, that you not only had done

12  the acts in question, but had the necessary requisite

13  criminal intent to do so.

14          Additionally, as you know, you have the right to

15  effective assistance of counsel at all stages of the case.

16  And if you could not afford to hire a lawyer, the Court

17  would appoint one to you at no cost to you to represent you

18  throughout the entirety of the case.

19          Now, at the trial, you would have the right to

20  hear and see all the witnesses called by the Government

21  against you and the right to confront and cross-examine

22  those witnesses in your defense.  Additionally, you would

23  have the right to challenge any evidence the Government

24  sought to use against you.

25          As I stated, at the trial you would never be

1   required to prove anything.  But if you decided to do so,

2   you would have the right to present a defense on your own

3   behalf; that is, to call any witnesses you deem necessary or

4   present any evidence you thought important.

5          If your witnesses would not come to the Court

6   voluntarily, or if you could not afford to pay for your

7   witnesses, you would have the right to have the Court to

8   order those witnesses to come testify for you at no cost to

9   you.  Additionally, if you could not afford to pay for your

10  evidence, you would have the right to have the Court to

11  order your evidence be produced at no cost to you.

12         Also, if you decided to do so, you would have the

13  right to testify in your own defense.  And, again,

14  Mr. McDonald, to be clear, at the trial you would not be

15  required to prove anything.  So if you decided not to

16  present a defense, the jury would be specifically instructed

17  that it could not draw any unfavorable conclusion from your

18  silence.

19         Do you understand, sir, that by pleading guilty in

20  this case, you are giving up all these valuable

21  Constitutional rights as I've just described them?

22         **THE DEFENDANT:**  Yes, Your Honor.

23         **THE COURT:**  Do you have any questions about any of

24  those rights?

25         **THE DEFENDANT:**  No, Your Honor.

```
 1              THE COURT:  I want you also to understand that if

 2   you have any objections as to how the charge was brought

 3   against you or as to how the evidence was gathered in your

 4   case, you are waiving any objections to those matters by

 5   entering a plea of guilt.  Do you understand that?

 6              THE DEFENDANT:  Yes, Your Honor.

 7              THE COURT:  I want you to understand, then, what

 8   the Government would have to prove in order to establish

 9   your guilt for Count I of the superseding indictment.  This

10   is what is known as the essential elements.  These elements

11   are outlined for you in paragraph A3 on page 2 of the plea

12   agreement.

13              The elements for Count I are, first, that you

14   knowingly persuaded, induced, enticed or coerced the victim,

15   S.E., to engage in sexual activity as charged.  Second, that

16   you used a computer to do so.  Third, that when you did

17   these acts, the victim, S.E., was less than 18 years old.

18   And, fourth, one or more of the individuals engaging in the

19   sexual activity could have been charged with a criminal

20   offense under the law of the state of Florida.

21              Having stated that, do you feel you understand

22   what the Government would have to prove in order to

23   establish your guilt for Count I?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  Do you have any questions about those
```

1  elements?

2       **THE DEFENDANT:**  No, Your Honor.

3       **THE COURT:**  All right.  In a moment, I'm going to

4  have Ms. Thelwell give me a factual basis in support of each

5  of those essential elements.  I expect she's largely going

6  to read or summarize from the facts of your plea agreement.

7  But you need to listen carefully to these facts because

8  they're not only important as the essential elements, but

9  the Court could rely upon them to determine your sentence.

10  Do you understand that?

11       **THE DEFENDANT:**  Yes, Your Honor.

12       **THE COURT:**  All right.  Ms. Thelwell.

13       **MS. THELWELL:**  On or about November 9th -- excuse

14  me, November 29th, 2016, Homeland Security Investigations,

15  HSI, Orlando, executed a Federal search warrant at the

16  residence of Jaime Esposito.  During the execution of the

17  search warrant, Esposito admitted that he used numerous

18  online accounts to communicate with individuals interested

19  in sexual exploitation of children.  Esposito admitted that

20  on or about July 11th, 2016, the defendant, Richmond

21  McDonald, and or his wife and codefendant, Shauna Maryann

22  Boselli, using Kik user name RjM337 and display name Tampa

23  Couple 337, began an online conversation with Esposito on

24  Kik messenger.  Esposito admitted that he had used Kik to

25  engage in sexually explicit conversations involving his

1  seven-year-old daughter, the child victim, with a man known

2  to him as "RJ," also known as Richmond McDonald, and

3  McDonald's wife, known to him as "Shauna," also known as

4  Shauna Boselli.

5       Esposito admitted that he had met Tampa Couple 337

6  on Motherless.com and traveled with the child victim to

7  Tampa in July 2016 so that the defendant and Boselli could

8  engage in sexual activity with the child victim.

9       Between July 11th and July 19th, 2016, McDonald

10 and Esposito exchanged intermittent messages through Kik and

11 text message.  Throughout their communication, the defendant

12 and Esposito referred to Boselli as "S" and the child victim

13 as "Tiger" and said that the child victim would gravitate

14 toward Boselli and copy what she did sexually.

15      The following is an excerpt of some of the Kik

16 conversations that the defendant had with Esposito regarding

17 the child victim.

18      On July 11th, 2016:

19      "Esposito:  She won't be wearing panties when we

20 meet.

21      "Esposito:  Or maybe her and "S" can go to the

22 bathroom together and tale them off as a treat.

23      "Esposito:  Take.

24      "Esposito:  LOL."

25      July 12th, 2016:

```
 1              "Tampa Couple 337:  We're not going to push

 2   anything.

 3              "Tampa Couple 337:  Or be hardcore crazy.

 4              "Esposito:  I made a hotel reservation for July

 5   19th west of Tampa.

 6              "Tampa Couple 337:  Nice."

 7              July 16th, 2016:

 8              "Esposito:  I understand that ... we hold each

 9   other's security.  I promise I'm being restrictive, paranoid

10   even.

11              "Tampa Couple 337:  When we meet, her and I will

12   be nervous, and we will have to behave and let her make the

13   move toward comfort.

14              "Esposito:  Honestly, if all we ever do is run

15   around and having fun and talk, get something to eat, I'm

16   not worried.  This is a lifelong friendship, and I'm in no

17   hurry.  Everyone will need to find their comfort level.

18              "Esposito:  What will happen, though, is she'll be

19   shy at first and will gravitate/copy "S."  She seems to

20   idolize her.

21              "Esposito:  'Cause she's like a princess.  LOL.

22              "Esposito:  I think my "S" wants to grow up to be

23   like your "S."

24              July 17th, 2016:

25              "Esposito:  Getting excited.
```

```
 1              "McDonald:  That's great."

 2              July 19th, 2016:

 3              "Esposito:  Your hard dick in my daughter's warm

 4    mouth.

 5              "Esposito:  LOL.  In my fantasy at least.

 6              "Tampa Couple 337:  Cute.

 7              "Tampa Couple 337:  And sexy.

 8              "Esposito:  No.  What I have in mind is us having

 9    a great day playing at the zoo and your backyard.

10              "Esposito:  No time idea yet.

11              "Esposito:  Will "S" be wearing panties?

12              "Tampa Couple 337.  Probably.

13              "Tampa Couple 337:  Female thing.

14              "Esposito:  Indeed.  Indeed.

15              "Esposito:  Maybe she could get "Tiger" to take

16    hers off mid-zoo.  I'm a little drunk, so I shouldn't

17    theorize too much.  But you can imagine them coming back

18    from the bathroom together and presenting them to us.

19              "Tampa Couple 337:  LOL.  Is hot at the zoo.

20              "Tampa Couple 337:  They can run around naked

21    later.  Being a nudist is legal.

22              "Esposito:  That will be so cute.

23              "Tampa Couple 337:  We'll mostly need to see if we

24    all have chemistry.

25              "Esposito:  Aww, man, I am excited.  This is going
```

 1    to be great memories.

 2             "Tampa Couple 337:  I hope so.

 3             "Tampa Couple 337:  Can you send us any photos

 4    tonight?

 5             "Tampa Couple 337:  "S" is nervous but excited.

 6             "Tampa Couple 337:  We will be passive until all

 7    of us feel comfortable.

 8             "Esposito:  Sure.  But don't worry.  There's

 9    nothing to be nervous about.  We're going to do what

10    everyone will have the most fun doing.  If nothing happens,

11    it's because we'll know the feeling isn't right.

12             "Tampa Couple 337:  I'm excited.

13             "Esposito:  Us too.  She keeps asking.

14             "Tampa Couple 337:  Ideally, I want to be her

15    uncle or Godfather, so to speak."

16             Esposito then sent a photo -- or, excuse me, a

17    video depicting the child victim behind what appeared to be

18    an adult shoulder.  In the video, the child victim waves at

19    the camera, says hello, and that she's excited.  Esposito

20    responded to the defendant's previous message saying that

21    the child victim would adore the defendant as an uncle or

22    Godfather-like figure.

23             Esposito and the defendant continued to exchange

24    Kik messages stating the following:

25             "Esposito:  Let's enjoy ourselves and let the

1    moment develop naturally.

2            "Esposito:  Break the ice at the zoo.  Don't force

3    anything.  And by the time we get to the house, you'll be

4    her idols.

5            "Tampa Couple 337:  I am sure.

6            "Tampa Couple 337:  That was all cute."

7            At this point, the defendant sent Esposito a video

8    depicting the defendant and Boselli in the video -- and

9    Boselli.  In the video, Boselli waves to the camera and

10   says, "Hi, I can't wait to meet you."

11           Then the defendant and Boselli turn to each other

12   and kiss.  Esposito responded, stating that the child victim

13   loved the video and then sent a picture of the child victim

14   holding a child's toy.

15           Esposito sent another picture of the child victim

16   lying in a bed holding a stuffed animal to the defendant and

17   Boselli.  The defendant responded to the pictures with the

18   following messages:

19           "Tampa Couple 337:  Aww, we adore her.

20           "Esposito:  We think you guys are the best.

21           "Tampa Couple 337:  Very happy.

22           "Tampa Couple 337:  Look forward to being -- look

23   forward to being long-term friends.

24           "Esposito:  Me too.  For sure."

25           On July 19th, 2016, Esposito took the child victim

1    to Tampa to meet the defendant and Boselli for the purpose

2    of all three of them engaging in sex acts with the child

3    victim.   Esposito took the child victim to Lowry Park Zoo in

4    Tampa where they met the defendant and Boselli.   After

5    spending time at the zoo and taking the child victim for ice

6    cream, the defendant and Boselli led Esposito and the child

7    victim to their house in Tampa.   While at the house, the

8    defendant performed oral sex on the child victim while

9    Esposito watched.   Afterward, Esposito and the child victim

10   returned to their hotel in Tampa.

11           On or about July 21st, 2016, the defendant and

12   Boselli went to the hotel and met with Esposito and the

13   child victim.   They all went swimming with the child victim

14   and then returned to the hotel room.   While in the hotel

15   room, Boselli performed oral sex on the child victim and

16   vaginally penetrated the child victim with an object.

17   Boselli showed the child victim how the defendant performs

18   oral sex and both she and the child victim performed oral

19   sex on the defendant while Esposito watched.

20           During this sexual encounter at the hotel, the

21   defendant ejaculated onto the child victim.   Esposito

22   preserved this abuse by photographing the child victim

23   and -- by photographing the child victim engage in sexually

24   explicit conduct with the defendant and Boselli.

25           Law enforcement officers also conducted a forensic

interview of the child victim.  Among other things, the child victim disclosed the following:

That her father, Esposito, had been sexually abusing her for a while, that he had taken her to Tampa to meet his friends whom she had known as "RJ" and "Shauna," and that they had all gone to the zoo, to get ice cream, and then to the defendant and Boselli's house.  The child victim also stated that the defendant and Boselli had come to the hotel and penetrated her with a sex toy while her father, Esposito, watched.

The child victim further disclosed that either the defendant or Boselli had put his or her mouth on the child victim's vaginal area, and that the defendant's penis had touched the child victim's vagina.

On November 30th, 2016, HSI agents executed a Federal search warrant at the defendant's residence located at 8202 Downfield Lane, Tampa, Florida 33615.  Agents seized numerous electronic devices, including, but not limited to, a Gateway desktop computer, tablets, external storage devices, the defendant's and Boselli's cellular phones, and the defendant's and Boselli's vehicle, a red Nissan Juke. The defendant and Boselli had used their red Nissan Juke with Florida license plate 879YHA to travel to and from the zoo and to Esposito's house -- excuse me, hotel.

Post-*Miranda*, the defendant admitted that his Kik

1    account user names are Tampa Couple 337 and RjM337.  The

2    defendant was shown a picture of Esposito, the child victim,

3    Boselli and himself.  The defendant admitted that he was

4    pictured in the photograph.  He also admitted that he had

5    met Esposito online and that he had talked with Esposito

6    online for months.  The defendant admitted that they had all

7    gone to the Lowry Park Zoo in July 2016.

8            Post-*Miranda*, Boselli admitted that she and the

9    defendant had met Esposito and the child victim at the Lowry

10   Park Zoo in July 2016.  After they left -- after they left

11   the zoo, they all went to get ice cream and then she and the

12   defendant invited Esposito and the child victim back to

13   their house.  The child victim started asking questions

14   related to sexual activities and Boselli allowed the child

15   victim to touch her breasts.  Boselli further stated that

16   she had performed oral sex on the defendant in the presence

17   of the child victim to show the child victim what it looked

18   like.

19           Esposito sat on the living room couch and watched

20   as the defendant performed oral sex on the child victim.

21   Esposito also performed oral sex on the child victim.

22           On the second day, Boselli and the defendant met

23   Esposito and the child victim at their hotel where the

24   defendant again performed oral sex on the child victim.

25           Based on the defendant's sexual conduct with the

child victim, the defendant could have been charged with a
criminal offense under Florida law.

HSI conducted a forensic analysis of all of the
devices that were seized pursuant to the Federal search
warrants at Esposito's residence and the defendant's
residence.  Agents found pictures on Esposito's electronic
devices of the defendant, Boselli, Esposito and the child
victim at the zoo, the ice cream store, and the hotel.
Agents also found several photos and videos depicting the
defendant and Boselli engaged in sex acts with the child
victim at the hotel.

Forensic analysis of the defendant's Gateway
desktop revealed that the defendant was in possession of
1,335 child pornographic images.  Eighty-six of the child
pornographic images were sadistic, showing vaginal
penetration and/or bondage of prepubescent children.
Additionally, Esposito had sent the defendant, via the
Internet, several child pornographic images and videos of
the child victim.  Some of the images found on the
defendant's Gateway desktop were of the child victim.
They're described as follows:

An image of a prepubescent female child, which is
the child victim, manually stimulating an adult male penis;
an image of the child victim performing oral sex on an adult
male penis; and an image of the child victim performing oral

1   sex on an adult male penis.

2          Forensic analysis of the defendant's Asus Nexus

3   tablet revealed that the defendant was in possession of

4   approximately 30 child pornographic images, 30 child-erotica

5   images, 90 child-anime images, two child-pornographic videos

6   and four child-erotica videos.  Some of the child

7   pornographic images were of a prepubescent female being

8   sexually molested by an adult male.  There were also images

9   of a naked prepubescent female that had been tied, bound by

10   a pink and/or purple rope, and in some images wearing a toy

11   pig nose or handcuffs.

12          Forensic analysis of the defendant's LG cellular

13   telephone revealed that the defendant was in possession of

14   approximately 15 child pornographic images and approximately

15   10 child-erotica images.

16          **THE COURT:**  Did you hear the facts as stated by

17   the prosecutor?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  Any disagreement with any of those

20   facts?

21          **THE DEFENDANT:**  No, Your Honor.

22          **THE COURT:**  Are those facts true?

23          **THE DEFENDANT:**  I'm sorry?

24          **THE COURT:**  Are those facts true?

25          **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  I want to draw your attention to two

2    of the provisions in your plea agreement, starting on page

3    9, paragraph A10.  These provisions entitled "Abandonment of

4    Property."  And by this provision, you specifically agree to

5    abandon any rights or interests you have in the property as

6    listed, in addition to forfeiting the property.

7    Specifically, the property listed includes the LG cell

8    phone, an Android Nexus 5, Gateway desktop computer, a

9    Gateway laptop computer, a Seagate hard drive, a Surface

10   Pro, a Nexus tablet, the Toshiba external hard drive,

11   another LG cellular phone, the Garmin GPS.

12          Do you understand that by this provision that you

13   have now forfeited, you've also agreed to abandon, any

14   rights or interest in that property?

15          **THE DEFENDANT:**  Yes, sir.

16          **THE COURT:**  Lastly, I want to draw your attention

17   to paragraph A11, which is entitled "Sex offender

18   registration notification."  By this provision, you

19   specifically agree and acknowledge that you understand your

20   obligations under the Sex-Offender Registration Notification

21   Act, meaning that you acknowledge that you must register and

22   keep the registration current in each of the following

23   jurisdictions:  The location of your residence, the location

24   of your employment, and, if you are a student, the location

25   of your school.  You also acknowledge that the registration

1   will require that you provide information that includes your

2   name, residence address, and the names and addresses of any

3   places at which you are or will be an employee or a student.

4           You further acknowledge that you understand that

5   you must update your registration no later than three

6   business days after any change of name, residence,

7   employment or student status, and that you further

8   understand that the failure to comply with these obligations

9   will subject you to further prosecution, that is prosecution

10  for failure to register under the Federal law which is

11  punishable by a term of imprisonment, fine or both.

12          Do you understand that?

13          **THE DEFENDANT:**  Yes, Your Honor.

14          **THE COURT:**  Any questions about your obligations

15  under the Sex-Offender Registration and Notification Act?

16          **THE DEFENDANT:**  No, Your Honor.

17          **THE COURT:**  Mr. McDonald, I do want you to

18  understand that the decision whether to plea guilty or not

19  is an important decision, and it's for you and you alone.

20  Having stated that, I want you to understand that it does

21  not matter to the Court in any way whether you decide to

22  enter a plea of guilt or decide to take the case to trial.

23  Do you feel you are prepared to make that decision today?

24          **THE DEFENDANT:**  Yes, Your Honor.

25          **THE COURT:**  All right, sir.  Please rise.

 1             Richmond Joseph McDonald, how do you plea to Count

 2    I of the superseding indictment which charges you with

 3    enticement of a minor in violation of Title 18, United

 4    States Code, Section 2422(b), guilty or not guilty?

 5             **THE DEFENDANT:**  Guilty.

 6             **THE COURT:**  And are you pleading guilty to this

 7    offense because you're, in fact, guilty of this crime?

 8             **THE DEFENDANT:**  Yes, Your Honor.

 9             **THE COURT:**  All right.  Mr. Beck, is there

10    anything you want to put on the record?

11             **MR. BECK:**  No, Your Honor.

12             **THE COURT:**  Okay.  Thank you, sir.  You may be

13    seated.

14             Ms. Thelwell, do you have anything else you want

15    to put on the record?

16             **MS. THELWELL:**  No, Your Honor.

17             **THE COURT:**  All right.  Thank you.

18             All right.  Mr. McDonald, before I conclude, I

19    want to ask you, sir, do you have any questions about

20    anything that we have discussed or for that matter anything

21    that I did not cover with you today?

22             **THE DEFENDANT:**  No, Your Honor.

23             **THE COURT:**  All right.  So let me note for the

24    record, based upon my review of the plea agreement, the

25    superseding indictment, as well as my discussions with

1    Mr. McDonald, and the factual basis as provided by the

2    Government, I am fully satisfied that Mr. McDonald is

3    competent to enter a plea of guilt and his plea is being

4    entered knowingly, intelligently and voluntarily, and it is

5    supported by an independent factual basis for each of the

6    essential elements of Count I of the superseding indictment.

7           So, Mr. McDonald, what that means, sir, is I'm

8    going to issue a report recommending to Judge Covington that

9    your plea be accepted.  You'll have 14 days to object to my

10   report.  If you do not object to my report, in all likely

11   event, your plea will be accepted by the Court and your case

12   will be scheduled for sentencing, which typically occurs

13   between 70 and 90 days from the date of your plea.  During

14   that interim period, the probation office is going to want

15   to conduct an interview with you.  It's your decision

16   whether to participate in the interview.  If you do decide

17   to participate in the interview, you could have Mr. Beck

18   present with you for that interview.

19          Has it already occurred, Mr. Beck?

20          **MR. BECK:**  Already occurred, Your Honor.

21          **THE COURT:**  All right.  Thank you.  Thank you.

22          All right.  Anything else at this time,

23   Ms. Thelwell?

24          **MS. THELWELL:**  No, Your Honor.

25          **THE COURT:**  Mr. Beck, anything else?

1          **MR. BECK:**  No, Your Honor.

2          **THE COURT:**  Mr. Beck, can I see you at sidebar

3    once we're done?

4          **MR. BECK:**  Yes, Your Honor.

5          **THE COURT:**  All right.  We'll be in recess.  Thank

6    you.

7          (Court was in recess at 3:55 p.m.)

8                    **C E R T I F I C A T E**

9

10         I certify that the foregoing is a correct

11   transcript from the audio recording of proceedings in the

12   above-entitled matter.

13

14                              June 7, 2018

15

16                          ___s\Nikki L. Peters_____
                            Nikki L. Peters, RPR, CRR, CRC, FPR
17                          Federal Official Court Reporter
                            United States District Court
18                          Middle District of Florida

19

20

21

22

23

24

25